FARMER, Judge.
A faculty member of Florida Atlantic University [FAU] was denied a promotion, allegedly on account of invidious discrimination. She filed a charge of illegal discrimination with the Equal Employment Opportunity Commission. Two days later, she served the president of FAU with a formal request to inspect and copy certain records, among which included the following:
Copies of the minutes and other documentation indicating the votes on tenure or promotion applications of all College level and University level Promotion and Tenure Committees from 1964 to date of inspection.
He objected to any inspection on the grounds that the records sought in the above description “consist of evaluative materials protected under Florida law.” She thereupon filed a petition for a writ of mandamus, which the trial court granted. FAU appeals.[1] We reverse.
Ordinarily, questions of public records inspection begin and end with section 119.07, Florida Statutes (1991).[2] In this case, however, an exemption elsewhere is asserted by FAU, viz., section 240.253, which provides:
240.253 Personnel records. — The university may prescribe the content and custody of limited access records which the university may maintain on its employees. Such records shall be limited to information reflecting evaluations of employee performance and shall be open to inspection only by the employee and by officials of the university who are responsible for supervision of the employee. Such limited access employee records are confidential and exempt from the provisions of s. 119.07(1). Except as required for use by the president in the discharge of his official responsibilities, the custodian of the limited access employee records may release information from such records only upon authorization in writing from the employee or upon order of a court of competent jurisdiction. * * *
FAU also asserts that it has designated the records sought to be inspected as confiden *1023 tial by its adoption of Fla.Admin. Code Rule 6C5-5.005, which says:
6C5-5.005 Limited Access to Employee Records. The contents of employee evaluation files shall be confidential, and shall conform to the requirements of applicable law, rules and collective bargaining agreements. Employee evaluation files shall not be disclosed except to the evaluated employee, to persons so authorized by the employee, to University officials whose duties require access to the file in accordance with University and departmental evaluation and supervisory procedures, to the President and to the President’s designees in the discharge of official responsibilities as provided in 6C5-1.002 and as may be provided by law. * * *
Referring to the words “collective bargaining agreements” in the above rule, FAU also asserts that the Board of Regents[3] has entered into a collective bargaining agreement with the United Faculty of Florida for the period 1988 to 1991, which contains the following provision:
11.8 Confidentiality. Except as noted above, only the employee and the employee’s representative, and university and Board officials responsible for the supervision or evaluation of the employee, may inspect information reflecting evaluation of employee performance contained in the employee’s evaluation file, except upon order of a court of competent jurisdiction.
FAU argues that the combined effect of these provisions justifies its refusal to allow appellee to inspect the records described above.
Because all exemptions from public records disclosure must find a statutory basis, it is necessary first to look at the statute. Professor Ceros-Livingston first argues that section 240.253 does not create any exemption at all. We disagree. For we find it impossible to read the words, “such limited access employee records are confidential and exempt from the provisions of s. 119.07(1),” as anything but an exemption from mandatory public disclosure.
We pause to note that FAU invites us to consider certain “legislative history”, consisting of committee reports from both the Senate and the House of Representatives of the Florida Legislature, as showing conclusively that the legislature intended in section 240.253 to grant an exemption from public records disclosure for the kind of records sought here. FAU places great emphasis, e.g., on the following words which appear repeatedly in the legislative materials furnished:
[B]y including peer evaluations as part of limited access records, the exemption safeguards candor, promotes collegiality, discourages mediocrity, and generally enhances the peer review process. If these records were not exempt from public inspection, universities might find it difficult to continue to attract quality staffs.
See Florida Senate, Committee on Education, Open Government Sunset Review Act Exemption Analysis, (November 4, 1987) at 2.
It is well established, however, that the rules of statutory construction may be employed only when the statute is ambiguous on its face. Streeter v. Sullivan, 509 So.2d 268 (Fla.1987). Section 240.253 is not ambiguous. The ordinary meaning and common usage of simple, workaday words, such as “information reflecting evaluations of employee performance,” is immediately apparent. Thus, even assuming that this kind of “legislative history” can teach us anything about what the legislature really meant by section 240.253, the lack of ambiguity in that statute precludes the use of these materials.
We acknowledge that section 240.253 is not a legislative undertaking to define precisely what constitutes “information reflecting evaluations of employee performance.” Rather, we understand the statute to be merely an authorization to the several universities in this state to exempt from *1024 public records disclosure a certain class of information. That class is described as “information reflecting evaluations of employee performance.” The legislature, we note, simply described the class without venturing to specify just what records might constitute such “information”. The statute thus leaves it to FAU to decide for itself what information in what records may fit into the legislative classification.
Here, the legislature used the term “prescribe” in place of the phrase “shall adopt rules,” which is frequently used elsewhere in chapter 240, part II. The word “prescribe” seems to us to allow some freedom for the university to decide just how it will designate which records or information shall constitute “evaluations of employee performance.” One way of so designating might be by formal rule-making under chapter 120. Another might be by formal agreement with the collective bargaining agent of all of its employees. Still another might be by university policy stated in a writing distributed to all employees, such as an employee handbook.
In this case, FAU seems to have tried the first two. Its rule broadly provides that the “contents of employee evaluation files shall be confidential.” Although the rule does not define just what information constitutes evaluations of employee performance, we think that that limitation itself, though concededly general in one sense, is yet specific enough to narrow the limited access materials to the class defined by the legislature. How the university will decide what records fit into the classification is, presumably, left to be ascertained by the circumstances and facts.
Because the first sentence of the rule refers to “employee evaluation files,” one might be tempted to read the rule as restricted to only the particular file folder containing an employee’s evaluation. Indeed, appellee so argues. FAU responds that it covers the content of any employee evaluations, no matter where they may be physically located. The trial court decided that the exemption here is limited to the employee’s annual evaluation file and does not pertain to anything else.
Obviously, the term “files” does not appear in the statute. This is an omission which we find intentional — especially in light of the statutory usage of the terms “records” and “information”. These terms are further limited by the classifying language, “reflecting evaluations of employee performance.” Indeed, the rule begins by saying that it is the “contents” of employee evaluation files which are protected.
The statute thus protects the contents from disclosure, not the file folders, file drawers or cabinets, or boxes or rooms or buildings in which the contents may happen to be placed. “Files” are merely receptacles into which papers are placed to keep them in some order and to aid in retrieval. The receptacle itself should not be confused with the contents, i.e., the “information” or “records” kept within it.
Even if it could be said that the rule is ambiguous, a conclusion we do not reach, we think that the meaning and intent of the above rule is best left to FAU and not the courts, so long as its reading is, as here, fairly plausible under the particular formulation of words used. We apply the principle that an agency’s construction of its own rules is entitled to great deference by the courts. Palm Harbor Special Fire Control District v. Kelly, 516 So.2d 249 (Fla.1987). In this instance, along with that deference, we have the added interpretive guidance of the collective bargaining agreement specifically referred to in the rule itself.[4]
Appellee invites us to compare FAU’s rule with the similar provision adopted by the University of Florida. The UF rule, Fla.Admin.Code Rule 601-7.018(6), says:
(6) Promotion and Tenure Materials and Discussions.
All information and documentation compiled for promotion and/or [sic] ten *1025 ure and the committee’s discussions described in section (5)(b) and (c) of this rule pertaining thereto shall be regarded as confidential evaluative information and shall be made known only to those individuals who are required to participate in making recommendations or making of the decision unless otherwise required by law.
We readily agree that the UF rule is a clearer expression of its intent than is the FAU rule. The test, however, for the enforceability of the FAU rule is not whether another university has said it more clearly but whether FAU has said it at all. We think it has.
We are strengthened in our conclusion by Tallahassee Democrat Inc. v. Florida Board of Regents, 314 So.2d 164 (Fla. 1st DCA 1975). In that case the record sought to be inspected was an internal investigative report about the university athletic staff. The university argued to the trial court that section 239.78, Florida Statutes [1973], allowed the university to keep the report confidential. The cited statute was a predecessor to section 240.253, and it is thus appropriate to compare its text with the current one. The statute then read:
239.78 Records of Personnel. — Regulations of the board of regents may prescribe the content and custody of limited access records which an institution in the state university system may maintain on its employees. Such records shall be limited to information reflecting evaluations of employee performance and shall be open to inspection only by the employee and by officials of the institution who are responsible for the supervision of the employee. Except as required for use by the president in the discharge of his official responsibilities, the custodian of limited access employee records may release information from such records only upon authorization, in writing, from the employee or upon order of a court of competent jurisdiction.
Section 239.78 cannot be distinguished from section 240.253. Any differences have to do only with technical references to the institution and its officials. Both statutes have an identical meaning: to allow the universities to keep confidential information on the evaluation of its staff.
The trial court denied relief in Tallahassee Democrat and quashed an alternative writ of mandamus previously issued. Among other things, the trial court had observed that the Board of Regents had adopted a rule, the pertinent text of which was:
The contents of faculty evaluation file [sic] shall be confidential and shall not be disclosed except to the affected faculty members and those whose duties require access to file [sic] in accordance with each university’s evaluation procedures.
314 So.2d at 166.
The report in question had been prepared by a university committee which its president had asked to study the university’s athletic program. Upon receipt of the report, the president had effectually fired the head football coach and his entire staff. The trial court found “inescapable” that the report dealt with “matters material to the evaluation of faculty members.” In its opinion approving the trial judge’s decision, the district court specifically approved that decision and held that the report was “a confidential evaluation of faculty which is covered by the foregoing rule.” 314 So.2d at 167.
Here, our would-be inspector of the minutes of all committee meetings showing votes on all promotion and tenure votes since this university was established argues that Tallahassee Democrat applies only to special investigative reports of the kind at issue there. We can find not a word in the opinion that so limits its holding. Actually, because the court found that the extraordinary report involved in that case was covered by the statutorily authorized confidentiality, it seems even more likely to us that the kind of routine reports involved here would indisputably be subject to this general limitation on access. Rather than standing as authority narrowing confidentiality, Tallahassee Democrat instead strongly enforces it.
Appellee’s last argument against confidentiality is that there is undisputed *1026 evidence in this record showing that FAU has already disclosed some of the information, i.e., committee votes in the College of Education on promotion for the last few years. She argues that FAU has thereby waived the limited access rule. The evidence shows without contradiction, however, that these few records were inadvertently furnished through mistake and not as part of any conscious decision of the president of the university. We thus view ap-pellee’s argument to be little more than a contention that, because some confidential records were unauthorizedly disclosed by a negligent associate dean, any vestige of confidentiality has been irrevocably waived and all remaining confidential records should now be disclosed.
We have no trouble in rejecting such a contention. The confidentiality that the legislature has long allowed the state universities to impose on such evaluative records is not a bursting bubble to be lost at the first pin-prick. It is not so frail that the oversight of a harried dean in one of the colleges can lose it for all faculty for all time. It is not so fragile that it can survive years of scrupulous compliance, yet be lost at the first unplanned disclosure. If it were, how confident could any evaluator be that candor in an assessment of a colleague would not be published?
We recognize that exceptions to public records disclosure are few and usually narrowly interpreted. The exception at issue here, however, is of long duration and is free from doubt. And so, because of the importance of the issue to the parties, we have discussed our reasoning at some length. What we have said means that the decision of the trial court cannot stand.
We therefore quash the writ of mandamus and remand with instructions to dismiss the petition. For that reason, we also reverse the award of attorney’s fees.
REVERSED AND REMANDED WITH INSTRUCTIONS.
LETTS, J., concurs.
ANSTEAD, J., concurs specially with opinion.

. Section 240.202, Florida Statutes (1991), provides that, for the purposes of chapter 240, "the powers, duties, and authority vested with a university shall be vested with the president of the university or his designee." Because President Cantanese might quite properly say "l’etat c’est moi” as to any exercise of university authority in this case, we shall refer to him as "FAU” in this opinion.

. All citations to the Florida Statutes should be understood as referring to the 1991 version, unless otherwise indicated.

. Sections 240.209 and 447.203(2) empower the Board of Regents to negotiate collective bargaining agreements on behalf of the state university system for discrete groups of employees, such as faculty.

. The subject rule says that the contents of the employee evaluation files "shall conform to the requirements of * * * collective bargaining agreements." Fla.Admin.Code Rule 6C5-5.005. The collective bargaining agreement here, in turn, requires confidentiality for “information reflecting evaluation of employee performance contained in the employee's evaluation file."