Beatrice **ALEXANDER** and David Coleman, as co-Administrators of the Estate of David Charles Coleman, Plaintiffs,

v.

Adam **HERBERT**, etc., et al., Defendants.

No. 92–501–Civ–J–10.

United States District Court,
M.D. Florida,
Jacksonville Division.

Sept. 22, 1993.

Elizabeth L. White, D. Gray Thomas, Sheppard & White, P.A., Jacksonville, FL, for plaintiffs.

Craig B. Willis, Asst. Atty. Gen., Office of the Atty. Gen., Tallahassee, FL, for defendants.

## ORDER

SNYDER, United States Magistrate Judge.

This cause is before the Court on three motions to compel filed by Plaintiffs. *See* Plaintiffs' First Motion to Compel Discovery (Doc. # 43), filed on July 29, 1993 (hereinafter First Motion); Plaintiffs' Second Motion to Compel Discovery (Doc. # 44), filed on July 29, 1993 (hereinafter Second Motion); Plaintiffs' Third Motion to Compel Discovery (Doc. # 51), filed on September 14, 1993 (hereinafter Third Motion). Defendants have filed responses to two of the motions.[1] *See* Defendants' Reply to Plaintiffs' First Motion to Compel Discovery (Doc. # 45), filed on August 16, 1993 (hereinafter Defendants' First Reply); Defendants' Reply to Plaintiffs' Second Motion to Compel Discovery (Doc. # 46), filed on August 16, 1993 (hereinafter Defendants' Second Reply). A hearing was held on the motions on September 15, 1993. With leave of Court, Plaintiffs filed a reply to the Defendants' Second Reply. *See* Memorandum in Support of Reply to Defendants' Reply to Plaintiffs' Second Motion to Compel Discovery (Doc. # 53), filed on September 15, 1993 (hereinafter Plaintiffs' Reply).

### Background

Plaintiffs allege the following facts in their Amended Complaint. David Charles Coleman, the son of Plaintiffs Beatrice Alexander and David Coleman, began attending the University of North Florida (UNF) as a full-time student in the fall of 1984. During the academic year 1987–88, he became acquainted with Margaret Haywood, also a student at UNF. Sometime during the late fall of 1988, Haywood began harassing Coleman by following him around campus and elsewhere. In addition, she began placing hundreds of harassing telephone calls to Coleman, his girlfriend Cheryl Quarles, also a student at

1. At the hearing, counsel for Defendants indicated he did not object on behalf of the Defendants to the Court's considering the Third Motion in conjunction with the other two motions.

UNF, and Quarles' family. It is alleged that, as early as October 1988, the Defendants—who are various officers of UNF—were placed on written notice that Haywood, while on the UNF campus, was threatening Coleman and Quarles with physical harm.

The harassment escalated dramatically with a physical encounter in the UNF library on April 16, 1989, when Haywood physically assaulted Coleman. After the assault, Haywood allegedly was yelling, screaming and "out of control." According to a written report prepared by campus police,

> [s]he stated she was tired of the problem she was having with Mr. Coleman and Ms. Quarles *and that they were going to pay.* I advised Ms. Haywood that she would have to leave the library. While leaving the area, *Ms. Haywood was very verbal, and threatening* and continued this all the way upstairs to the exit. Ms. Haywood was also uncooperative.

Coleman was assigned an administrator, Defendant Doug Covey, Dean for Student Life, to handle his complaints and ensure that Haywood did not further threaten or harass him. Coleman himself obtained a restraining order against Haywood, and it is alleged Defendants were aware of it.

On June 9, 1989, UNF entered into a Memorandum of Agreement with Haywood which provided for her continued status as a student contingent upon her satisfaction of certain conditions. Among other things, she agreed to undergo psychiatric evaluation and follow-up with further appointments, if recommended, and to conform to the requirements of the restraining order issued on May 11, 1989. In return, UNF agreed to let her register for summer session and subsequent semesters, and to drop the requirement of a university police escort while she was on campus. It is alleged Haywood did not comply with the requirement that she obtain a psychiatric examination and counseling, and that UNF made no effort to enforce this condition.

On several occasions in November 1989, Coleman notified university police that Haywood continued to harass him, confront him in violation of the terms of the restraining order, and make harassing telephone calls. On November 29, 1989, Coleman reported to Defendant Dr. Thomas C. Healy, Interim Vice President for Student Affairs, that Haywood continued to harass him and continued to violate the Memorandum of Agreement. The next day, Coleman and Quarles met with Dr. Healy, Dean Covey, and Defendant Otis Holloway Owens, Dean for Academic Support Services, and advised them Haywood was exhibiting dangerous behavior toward Coleman, and that he believed she would hurt him. Each of these Defendants assured Coleman they would take steps to ensure his physical safety and protect him from Haywood. These steps allegedly were never undertaken.

On December 5, 1989, as Coleman entered his regularly scheduled classroom for class, Margaret Haywood approached him and shot at him six times with a Raven .25 caliber automatic, fatally wounding him. That same day, UNF sent a letter to Haywood asking her to provide proof of her compliance with the conditions of the Memorandum of Agreement, including the condition that she undergo psychiatric examination. On April 24, 1992, Plaintiffs filed the instant action in state court,[2] alleging, among other things, a violation of 42 U.S.C. § 1983.

### First Motion

 Plaintiffs' First Requests for Production of Documents to Defendants Herbert, Healy, Owens and Covey (hereinafter First Requests) included the following request:

> 4. All documents filed or dated between January 1, 1987 and the date of service of this request, including but not limited to incident reports, student disciplinary actions, student complaints, student counselings, monitoring of student activities, contractual agreements relating to student attendance at the University of North Florida, letters, memoranda, notices of threats of physical harm, logs, tape recordings, computer records and academic records relating to Margaret Haywood as a student at the University of North Florida.

**2.** The action subsequently was removed to feder- al court by the Defendants.

First Motion at 2. Initially, Defendants objected to this request on the ground "Margaret Haywood's student records are confidential according to Florida Statute 288.093, [sic] absent either her consent or notice to her." *Id.* Nevertheless, they subsequently agreed to produce certain documents, but continued to withhold "records relating to Margaret Haywood's counseling." *Id.* Plaintiff contends these records are relevant to "the issue of whether the defendants had a legal duty, undertook a duty or breached a duty of care with respect to plaintiffs' decedent." *Id.* at 2–3.

The Court agrees the documents are relevant to this case. As set forth above, Plaintiffs essentially are alleging that the Defendants were aware Haywood presented a danger to Coleman, took steps to address her dangerous propensities, and then failed to follow through on these measures with tragic results. The records relating to Haywood's counseling are directly relevant to the allegation she presented a danger to Coleman, and, potentially, to the allegation the Defendants were aware of this danger. Hence, Plaintiffs' request satisfies the test for relevance set forth in Rule 26(b)(1), Federal Rules of Civil Procedure.

Defendants contend, however, "[t]hese records are made confidential pursuant to State statutory and common law." Defendants' First Reply at 1. Although Defendants do not identify the common law privilege to which they are referring, the Court notes the Florida Statutes provide:

> (d) *Right of privacy.*—Every pupil or student shall have a right of privacy with respect to the educational records kept on him. Personally identifiable records or reports of a pupil or student, and any personal information contained therein, are confidential and exempt from the provisions of s. 119.07(1). No state or local educational agency, board, public school, area vocational-technical center, community college, or institution of higher education in the State University System shall permit the release of such records, reports,

or information without the written consent of the pupil's or student's parent or guardian, or of the pupil or student himself if he is qualified as provided in this subsection, to any individual, agency, or organization. ... However, personally identifiable records or reports of a pupil or student may be released to the following persons or organizations without the consent of the pupil or his parent:

> . . . .

> [10.]b. A person or entity pursuant to a court of competent jurisdiction in compliance with an order of that court or the attorney of record pursuant to a lawfully issued subpoena, upon the condition that the pupil or student ... is notified of the order or subpoena in advance of compliance therewith by the educational institution or agency.

Fla.Stat.Ann. § 228.093 (West Supp.1993). Assuming *arguendo* this statute is applicable to this case, it clearly indicates educational records may be disclosed upon order of the Court provided the student is notified by the educational institution prior to compliance with the order.

Defendants suggest the Court "may wish to consider notice to Ms. Haywood and allow her the opportunity to be heard on this issue so directly impacting on her privacy rights." Defendants' First Reply at 1. However, the statute provides only for notice before *compliance,* not before the order issues.[3] They further suggest the Court consider "limitations to be placed upon the disclosure of such records and what should be done with such records when this litigation is finally resolved." *Id.* Due to the sensitive nature of such materials, the Court agrees, and a confidentiality order will issue as outlined below. Accordingly, for all the reasons set forth above, the records relating to Margaret Haywood's counseling should be disclosed subject to restrictions on their use and ultimate disposition.

---

**3.** The psychotherapist-patient privilege arguably would apply to these records. *See* Fla.Stat.Ann. § 90.503 (West 1979 & Supp.1993). However, as discussed below, the federal law of privilege governs in § 1983 cases, and it does not recognize any such privilege.

### Second Motion

Plaintiffs' Second Motion concerns two additional document requests contained in their First Requests:

7. All documents referred to in requests 1 through 6 as they relate to any individual under your supervision.

8. All documents relating to the employment of any individual under your supervision, including but not limited to personnel files.

Second Motion at 2. Defendants objected to these requests on the grounds they were vague, overbroad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, but agreed to produce the personnel files of any individuals, if identified by the Plaintiffs. Plaintiffs then identified fourteen such individuals, including persons not named as defendants herein. *See* Defendants' Second Reply at 1–2.

Defendants, satisfied their vagueness, overbreadth, and burdensomeness objections had been met, produced some of the documents requested, but declined to produce records relating to the evaluations of the identified individuals. In that regard, it is noted the Florida Statutes provide:

The university may prescribe the content and custody of limited access records which the university may maintain on its employees. Such records shall be limited to information reflecting evaluations of employee performance and shall be open to inspection only by the employee and by officials of the university who are responsible for supervision of the employee. Such limited access employee records are confidential and exempt from the provisions of s. 119.07(1). Except as required for use by the president in the discharge of his official responsibilities, the custodian of limited access employee records may release information from such records only upon authorization in writing from the employee or upon order of a court of competent jurisdiction.

Fla.Stat.Ann. § 240.253 (West Supp.1993). Again assuming this statute applies, the Plaintiffs are correct that it allows for disclosure of such records upon Court Order, and does not provide for notice to the affected employee. Disclosure of such records is appropriate, moreover, when they may contain information relevant to issues raised in the lawsuit. *Jepsen v. Florida Bd. of Regents,* 610 F.2d 1379, 1384–85 (5th Cir.1980). *Jepsen* is particularly apposite since it involved Fla.Stat.Ann. § 239.78 (West 1977), a predecessor to § 240.253. *Cantanese v. Ceros–Livingston,* 599 So.2d 1021, 1025 (Fla. 4th DCA 1992).

While the case for relevancy here may not be as compelling as it was in *Jepsen,* the Court nevertheless finds the requests, to the extent they seek records which in any way reflect knowledge of or interaction with Coleman or Haywood by the specified employees or knowledge of any incident alleged in the Amended Complaint, appear "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Federal Rules of Civil Procedure. As articulated by Plaintiffs in their reply:

The requested records are reasonably calculated to lead to the discovery of evidence establishing the conduct of defendants toward the decedent and Ms. Haywood, as well as defendants' relationship with the decedent and Ms. Haywood. The records at issue are likely to reflect whether the relevant conduct of the specified employees was condoned or condemned or considered inconsequential.

Plaintiffs' Reply at 5.

Defendants further contend, however, that the Court should consider notifying the nonparties whose evaluations Plaintiffs seek and giving them an opportunity to be heard on the issue. While the Court is not inclined to follow this suggestion, it is sensitive to the privacy concerns expressed by Defendants. Thus, as with Haywood's counseling records, Defendants should provide notice to the nonparty individuals prior to complying with this Order. In addition, as outlined below, the Court will follow the Plaintiffs' suggestion, made at the hearing, that these records be produced subject to appropriate restrictions designed to preserve their confidentiality. Accordingly, the evaluation records of the employees previously specified by Plaintiffs which in any way reflect their knowledge of

or interaction with Coleman or Haywood or knowledge of any of the incidents alleged in the Amended Complaint, should be disclosed subject to appropriate restrictions on their use and ultimate disposition.

### Third Motion

 Finally, Plaintiffs seek an order compelling Gordon West, a psychologist who was employed by UNF and who counselled Margaret Haywood prior to David Charles Coleman's death, to attend a deposition. Mr. West had informed Plaintiffs he would decline to answer questions concerning his contacts with Haywood on the grounds they arose in his capacity as a counseling psychologist for UNF. Plaintiffs contend federal common law provides the rule of decision with regard to whether such testimony would be privileged, and that, under federal common law, no psychotherapist-patient privilege exists. Indeed, inasmuch as jurisdiction in this case is based on 42 U.S.C. § 1983, the federal law of privilege controls. *Hancock v. Hobbs,* 967 F.2d 462, 466 (11th Cir.1992) (per curiam). Moreover, federal common law does not recognize a psychiatrist-patient privilege. *Id.* Accordingly, the Third Motion should be granted.

The Court is cognizant Mr. West has neither appeared nor been heard on this issue. Counsel for Plaintiffs acknowledged he had not been served with a copy of the Third Motion, but advised he was aware it would be filed, and had requested the Plaintiffs obtain a Court order. In fact, counsel advised that Plaintiffs and Mr. West already have tentatively scheduled his deposition with the expectation that an order granting the Third Motion would enter. However, to ensure he is not unfairly subjected to the contempt power of the Court, Mr. West will be given an opportunity to object to this Order if he wishes.

Upon due consideration, it is hereby **ORDERED**:

(1) the First Motion (Doc. # 43) is **GRANTED** and Defendants shall afford notice to Margaret Haywood within twenty (20) days of the date of this Order, and, within three (3) days of such notice, shall furnish the requested documents to Plaintiffs;

(2) the Second Motion (Doc. # 44) is **GRANTED** and Defendants shall afford notice to the employees whose records will be produced within twenty (20) days of the date of this Order, and, within three (3) days of such notice, shall furnish the requested documents to the extent outlined above to Plaintiffs;

(3) the Third Motion (Doc. # 45) is **GRANTED** without prejudice to Mr. West filing an objection with the Court within three (3) days of being served with a copy of this Order; Plaintiffs shall ensure such service is perfected;

(4) upon receipt of the materials produced pursuant to paragraphs (1) and (2) above, as well as the transcript of the deposition obtained pursuant to paragraph (3), counsel for Plaintiffs shall ensure they are disclosed only to attorneys involved in this case, their staff, and any experts retained in connection with this case pending entry of a confidentiality order. In that regard, counsel for Plaintiffs and Defendants shall confer and agree to the terms of the confidentiality order to enter, and shall submit the stipulated confidentiality order within ten (10) days of the date of this Order. If no agreement is reached, Plaintiffs shall, within twenty (20) days of the date of this Order, file a proposed confidentiality order, and Defendants shall file their response within five (5) days of service of same. Defendants' response shall state with specificity their objections to the terms of Plaintiffs' proposed confidentiality order, and shall propose such modifications as they deem sufficient to meet their objections. Thereafter, the Court will consider Plaintiffs' proposed order and the objections thereto, and enter an appropriate order.

**DONE AND ORDERED.**